IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

FILED IN OPEN COURT

JAN 29 2013

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 2:12cr185 |
| ) | |
| KEITH ALLEN TAYLOR, ) | |
| ) | |
| Defendant. ) | |

## STATEMENT OF FACTS

The parties stipulate that the allegations in Count One of the Criminal Indictment and the following facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt.

1. On the evening of June 1, 2012, members of the Hampton Roads Border Enforcement Security Task Force (HR-BEST) and the Portsmouth Police Department's Special Investigation Unit (SIU) went to Keith Allen Taylor's residence on Francis Street, Portsmouth, Virginia. Keith Allen Taylor (hereinafter "Taylor") gave consent for members of the investigative team to enter his residence to conduct an interview with him and search his residence for the presence of contraband.

2. In a search of the residence, officers recovered a Sig Sauer P239 .40 caliber pistol, a Mossberg 500 12-gauge shotgun, eight (8) Suboxone tablets, approximately 14 grams of marijuana, $6,880 in U.S. Currency, a digital scale, and various packaging materials consistent

1

with drug distribution. During the consensual interview of Taylor at his residence, Taylor admitted to having imported multiple kilograms of Methylone and smaller quantities of 2,5-dimethoxy-4-iodophenethylamine (2C-I) from China. Taylor stated he placed between 10 or 11 [one (1) to] orders since the summer of 2011, ordering [at least] three (3) kilograms of Methylone at a time. His most recent order received from the Chinese laboratory was in April 2012.

3. Taylor stated that during the summer of 2011, he sold the Methylone he received from China, on his own, to individuals ~~at various "raves" and nightclubs~~ in the Eastern District of Virginia, but after a short period of time doing this, began to wholesale the imported Methylone to David Lee Jones, III. According to Taylor, he would "front" multiple kilograms to Jones at a time with the agreement that Jones would re-pay Taylor $6,000 per kilogram of Methylone he received.

4. Taylor stated that the typical sequence of events to place and receive an order of Methylone was as follows:

   a. Jones expressed his need for a particular quantity of Methylone to Taylor (generally 2-3 kilograms every two to three weeks);

   b. Taylor made contact the Chinese laboratory to confirm pricing and availability and placed an order of Methylone via email;

   c. Taylor wired funds to the Chinese lab via MoneyGram and sent the MoneyGram confirmation number to the laboratory contact;

   d. The Chinese lab acknowledged receipt of funds via email, shipped the package via EMS Worldwide Express Mail, and transmitted a tracking number to Taylor via email;



    e. The package was delivered within one (1) week to Taylor at his residence;

    f. Taylor received the package of Methylone via the United States Postal Service, unpacked it, discarded outer packing material and notified Jones that the package had arrived from China; and

    g. Jones retrieved the package from Taylor's residence.

5. The agents of HR-BEST received consent to view and preserve Taylor's emails. A review of the emails showed that Taylor had placed four orders for Methylone to the lab in China since March 2012:

| Date | Amount | Quantity |
|---|---|---|
| 03/12/12 | $3,500 | 2 kg of Methylone |
| 04/01/12 | $4,400 | 3 kg of Methylone |
| 04/23/12 | $3,100 | 2 kg of Methylone |
| 05/31/12 | $6,000 | 4 kg of Methylone |

6. MoneyGram records showed that Taylor, through a third party, had wired funds to an individual in China from a check-cashing store and a grocery store on Victory Boulevard on multiple occasions in 2011 and 2012. The funds wired to China were always sent to the same individual at the Chinese laboratory. The last wire was for $1,980 on May 30, 2012, which was for the May 31, 2012 order. Taylor admitted that he owed an additional $4,060 on that order for it to be completed by the lab. Records verified that the laboratory contact received each of these payments from Taylor at the Bank of China in Suzhou, China.

7. Postal records verified that Taylor had received multiple international packages from China in the last year.



8. The acts of the defendant in furtherance of the offense charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law. The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offenses charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities. The defendant further acknowledges that he is obligated under his plea agreement to provide additional information about this case beyond that which is described in this statement of facts.

NEIL H. MACBRIDE
UNITED STATES ATTORNEY

By: _____
Amy E. Cross
Special Assistant United States Attorney

<u>Defendant's Signature</u>:   After consulting with my attorney and pursuant to the plea agreement entered into this day between myself, the United States and my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
Keith Allen Taylor
Defendant


<u>Defense Counsel's Signature:</u>   I am Keith Taylor's attorney.  I have carefully reviewed the above Statement of Facts with him.  To the best of my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Richard H. Doummar
Counsel for the Defendant

5